O

# United States District Court
# Central District of California

| | |
|---|---|
| B.M., a minor by and through her Guardian Ad Litem NORMA DE LA CRUZ, individually and as successor in interest to GILBERT MESA; and VERONICA MESA,<br><br>  Plaintiffs,<br><br>  v.<br><br>COUNTY OF SAN BERNARDINO; JONATHAN M. SUSANTO; and DOES 1–10,<br><br>  Defendants. | Case No. 2:16-cv-6331-ODW (DTB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [29]** |

## I. INTRODUCTION

Before the Court is Defendants County of San Bernardino and Jonathan Susanto's Motion to Dismiss. (ECF No. 29.) While Plaintiffs failed to timely oppose the Motion, C.D. Cal. L.R. 7-9, the Court nonetheless addresses the merits of Defendants' arguments. For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.[1]

---

[1] After reviewing the papers submitted in support of the Motion, the Court deems the Motion appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## II. FACTUAL BACKGROUND

On March 27, 2015, Gilbert Mesa and his ex-girlfriend, Dalia Reyes, "had a dispute and ensuing altercation" that resulted in Mesa cutting himself with a knife. (First Am. Compl. ("FAC") ¶ 22.) Deputies from the San Bernardino County Sheriff's Department ("SBSD"), including Deputy Susanto, were summoned to treat Mesa for his hand laceration. (*Id.* ¶ 23.) The deputies ultimately brought Mesa to the Big Bear Valley Community Hospital, where a doctor treated Mesa's injury. (*Id.* ¶ 24.) During this visit, the treating physician did not treat, or even note, any injuries to Mesa's head. (*Id.* ¶ 24.) In fact, the physician affirmatively noted that Mesa did not have any other skin injuries. (*Id.*, Ex. A.) The next day, Mesa arrived with his mother at the Big Bear Jail to give a statement to the SBSD regarding his dispute with Reyes. (*Id.* ¶ 26.) After the interview, Deputy Susanto arrested Mesa and booked him into the Big Bear Jail. (*Id.*) Deputy Susanto allegedly told Mesa's mother that Mesa "had to be punished for what he did to Dalia Reyes." (*Id.*)

Plaintiffs allege that sometime between 5:30 p.m. and 8:50 p.m. that night, Deputy Susanto "assaulted and severely beat Mesa in the back of the head," which caused a laceration that required five staples to close. (*Id.* ¶ 29.) Plaintiffs allege that during this timeframe, another inmate at the jail "observed Mesa, standing inside his cell, wearing nothing but a pair of boxers, and surrounded by several deputies," and that this was the "prelude" to the assault on Mesa. (*Id.* ¶ 30.) At approximately 8:50 p.m., Mesa hung himself by his shoelaces. (*Id.* ¶ 31.) Mesa was still alive when the deputies found him, and he was transported to the Big Bear Valley Community Hospital for treatment. (*Id.* ¶¶ 31, 33.) Despite treatment, Mesa died two days later. (*Id.* ¶ 33.)[2]

Plaintiffs originally filed an action against the County in this Court on March 11, 2016. (*See* Compl., *B.M. v. County of San Bernardino*, No. 5:16-cv-00446-ODW-

---

[2] While Plaintiffs previously asserted several theories of liability against Defendants relating to Mesa's suicide, Plaintiffs do not appear to do so in this iteration of the complaint.

DTB (C.D. Cal. Mar. 11, 2016), ECF No. 1 (hereinafter *B.M. I*).) The Court granted the County's Motion to Dismiss with leave to amend on June 22, 2016. (Order, *B.M. I*, ECF No. 21.) After Plaintiffs failed to timely file an amended complaint, the Court dismissed the case without prejudice. (Minute Order, *B.M. I*, ECF No. 22.) A month later, Plaintiffs refiled the action. (ECF No. 1.) Upon Motion by Defendants, the Court dismissed each of Plaintiffs' claims—some with leave to amend, and some without. (ECF No. 22.) After Plaintiffs filed a timely First Amended Complaint, Defendants again moved to dismiss. (ECF No. 29.) Plaintiffs failed to timely oppose the Motion, which is now before the Court for decision.

### III.   LEGAL STANDARD

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). However, the factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a). However, a court may deny leave to amend when it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV. DISCUSSION

Plaintiffs bring two claims against Defendants: (1) violation of the Eighth and Fourteenth Amendment under 42 U.S.C. § 1983; and (2) conspiracy to violate Mesa's civil rights under § 1983. (FAC ¶¶ 35–48.) Defendants move to dismiss each claim. The Court considers each claim in turn.

### A. Violation of the Eighth and Fourteenth Amendments

As Defendants note, claims of excessive force against pretrial detainees (such as Mesa) "are analyzed under the Fourteenth Amendment Due Process Clause, rather than under the Eighth Amendment." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). "[S]uch 'punishment' can consist of actions taken with an 'expressed intent to punish.' . . . [I]n the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (citations omitted); *see generally Bell v. Wolfish*, 441 U.S. 520, 561 (1979).

Here, Plaintiffs state sufficient facts to support a claim for violation of Due Process. Plaintiffs allege that Defendants assaulted Mesa after arresting him, resulting in a head wound that required five staples to close. Plaintiffs further allege that the physician who treated Mesa the day before his arrest affirmatively noted that Mesa

4

1 had "no other injuries" on his skin apart from the laceration on his hand, suggesting that Mesa's injury occurred during his detention. (FAC ¶ 24, Ex. A.) Assuming the truth of these allegations, it is difficult to conceive how the use of force that causes such injury could be "rationally related to a legitimate nonpunitive government purpose." *Kingsley*, 135 S. Ct. at 2473.

To be fair, Plaintiffs' theory is not without its shortcomings. As Defendants point out, the presence of deputies in Mesa's cell (as observed by the anonymous inmate) hardly shows that an assault in fact took place, as there are innumerable other (and perfectly lawful) explanations for their presence in his jail cell. *See Iqbal*, 556 U.S. at 682. Moreover, Plaintiffs' theory relies on the rather doubtful scenario that within only a three-hour period, the deputies (1) assaulted Mesa, (2) treated the resulting head laceration, and (3) brought him back to his cell (after which Mesa hung himself). But while doubtful, it is nevertheless still *plausible*, which is all that is required at the pleading stage. *See id.* at 678.

**B.      Conspiracy to Violate Civil Rights**

In order to state a claim for conspiracy under § 1983, a litigant must first establish an underlying constitutional violation. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012). Once Plaintiffs do so, they must show "that the conspiring parties reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Id.* at 935.

In its prior order dismissing Plaintiffs' Complaint, the Court concluded that Plaintiffs had not pleaded sufficient facts in support of their conspiracy claim. While Plaintiffs reassert their conspiracy claim in their First Amended Complaint, they have not included any additional facts tending to show a conspiracy. Thus, the Court dismisses this claim without leave to amend. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) ("Leave to amend may . . . be denied for repeated failure to cure deficiencies by previous amendment.").

/ / /

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss. (ECF No. 29.) The Court dismisses without leave to amend Plaintiffs' first claim insofar as it is based on the Eighth Amendment. The Court also dismisses without leave to amend Plaintiffs' second claim for conspiracy. Defendants' Motion is otherwise denied. Defendants should answer Plaintiffs' First Amended Complaint with seven days of this Order.

**IT IS SO ORDERED.**

January 18, 2017

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**